IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                           **CASE NO. 5:19-CR-50058-002**

**JAMES BLAIR**                                                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant James Blair's *pro se* Motion for Compassionate Release (Doc. 70). The Government filed a response in opposition (Doc. 74). For the reasons explained below, the Court finds Defendant is not entitled to compassionate release and, therefore, **DENIES** the Motion.

### I.  BACKGROUND

On June 26, 2019, Defendant was named in three counts of a five-count indictment accusing him of various methamphetamine-related offenses. (Doc.1). Defendant pleaded guilty to one count of conspiracy to distribute methamphetamine and one count of possessing a firearm in furtherance of a drug trafficking crime. (Doc. 32). On January 8, 2020, the Court sentenced Defendant to 43 months imprisonment on the meth distribution charge and a mandatory 60-month term of imprisonment on the firearm charge, for a total of 103 months. (Doc. 54). The Court also ordered Defendant to serve three years of supervised release and pay a $200 special assessment and an $800 fine. *Id*. Defendant has now served 66% of his sentence.

On May 1, 2023, Defendant filed his first motion for compassionate release, citing his own medical conditions and the need to care for his elderly parents as extraordinary and compelling reasons. (Doc. 58, p. 5). Specifically, Defendant explained he had open

1

heart triple bypass surgery, and he suffers from chronic kidney disease, type 3 diabetes mellitus, and obesity. *Id.* On November 27, 2023, the Court adopted Magistrate Judge Christy Comstock's Report and Recommendation that it deny Defendant's May 1, 2023 motion. *See* Docs. 68 & 69.

On December 10, 2024, Defendant filed the instant Motion for Compassionate Release, again citing his own health and the need to care for his parents. *See* Doc. 70. The only difference between the two requests is that a just over a year has now passed, so, arguably, Defendant's health[1] and his parents' health have likely further deteriorated.

## II.  LEGAL STANDARD

Under the First Step Act of 2018 ("FSA"), incarcerated individuals are permitted to seek sentence reductions directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Here, the Government agrees that Defendant exhausted his administrative remedies prior to filing this Motion. (Doc. 74, p. 5). Since the threshold requirement has been satisfied, the Court may grant Defendant a sentence reduction if, the Court finds, after taking into account the 18 U.S.C. § 3553(a) factors: "extraordinary and compelling reasons warrant such a reduction," "the defendant is not a danger to the

---

[1] Defendant's medical records indicate that he suffers from "type 2 diabetes mellitus, hyperlipidemia, an unspecified mood [affective] disorder, hypertensive heart disease without heart failure, angina pectoris, gastro-esophageal reflux disease without esophagitis, seborrheic dermatitis, enlarged prostate without lower urinary tract symptoms, and pain." (Doc. 70, p. 24). Defendant receives prescribed medications, such as insulin, from the BOP's Health Services. *Id.* at pp. 16–18.

2

safety of any other person or to the community," "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Guidelines ("USSG") explain what constitutes "extraordinary and compelling" reasons under § 3582(c)(1)(A)(i). First, a defendant's medical circumstances may be taken into account if a defendant: (1) has a terminal illness; (2) is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or experiencing deteriorating physical or mental health; or (3) has a medical condition that requires prolonged or specialized medical care that is not being provided. USSG § 1B1.13. The Court may consider the defendant's age under certain conditions: if the defendant is at least sixty-five years old, has served at least ten years or 75% of his term of imprisonment (whichever is lesser), and is experiencing serious deterioration in his health because of the aging process. USSG § 1B1.13.

A Court may also take into account a defendant's family circumstances where the defendant's parents are incapacitated and the incapacitation of the defendant's parent when the defendant is the only available caregiver. USSG § 1B1.13.

Even assuming Defendant met the requirements for extraordinary and compelling circumstances under USSG § 1B1.13, Section 3582(c)(1) requires the Court to consider the factors in 18 U.S.C. § 3553(a) before granting a motion for compassionate release. These considerations include "the nature of the circumstances of the offense and the history and characteristics of the defendants" and "the need for the sentence imposed" to demonstrate the following: "reflect the seriousness of the offense, to promote respect for the law, [ ] to provide just punishment for the offense[,] to afford adequate deterrence to

criminal conduct[,] . . . and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B), (a)(2)(D).

### III. DISCUSSION

The Court first addresses whether Defendant's asserted extraordinary and compelling circumstances meet USSG § 1B1.13's threshold requirement. Then, the Court will consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether Defendant is a suitable candidate for compassionate release.

#### A. Extraordinary and Compelling Circumstances

##### 1. Family Circumstances

Defendant argues that he qualifies for compassionate release because his parents are incapacitated, and he is the only available caregiver. *See* USSG § 1B1.13. Defendant's Motion explains that his mother, Juelena Blair, underwent hip surgery to repair a fracture and is now using a walker. Mrs. Blair's doctor recommends that she have "24-hour care" for her safety and needs assistance with daily living activities. *Id.* Defendant's father, JB Blair, has poor memory, poor overall health, and also needs assistance with daily living activities. *Id.* at p. 20. Mr. Blair's doctor states that he has "neuropathy, diabetes, cardiovascular disease, [and] renal disease" and, as a result, needs "24/7 observation." *Id.*

Defendant contends that he is "needed at home to help [his sister] take care of two elderly parents who are 86 and 89 years old with debilitating illnesses." *Id.* at p. 5. Although Defendant claims his sister "lives far away and has to take care of her Grandchildren," *id.*, the Court agrees with the Government that the ten miles between

4

Defendant's sister's residence and his parents' residence is not sufficient to show she is unavailable to care for them. *See* Doc. 74, p. 6. The Court finds that Defendant is not the only available caregiver, and these circumstances do not warrant early release per USSG § 1B1.13(3), but the Court will consider them as part of the totality of circumstances.

### 2. *Defendant's Medical Conditions*

Defendant also cites his own medical conditions and the degree to which those conditions subject him to an increased risk of death or severe disease from COVID-19.

While the Court is persuaded that Defendant suffers from serious medical conditions, he has failed to demonstrate that these conditions have deteriorated to the point that he is unable to provide self-care within his correctional facility. To the contrary, despite his various health conditions, Defendant contends that he is "physically able to take care of [him]self" and would be able to assist his parents with their daily healthcare needs if he were released. (Doc. 70, p. 8). Additionally, Defendant's medical records confirm that he receives specialized medical care in the BOP, including a heart triple bypass surgery and medications for his other conditions. *Id.* at pp. 16–18. Based on Defendant's assertions of his ability to care for his parents and the evidence that he is sufficiently taken care of in the BOP, the Court finds that Defendant receives adequate treatment for his nonterminal conditions.

Defendant also argues that his extensive medical history shows he is at a higher risk of an unfavorable outcome should he contract COVID-19. *Id.* at 23. However, Defendant provides no information as to the current rates of COVID-19, and the BOP website shows that MCFP Springfield presently has no active cases of the infection. *See* Fed. Bureau of Prisons, *Inmate COVID-19 Data*, https://www.bop.gov/about//statistics//

5

statistics_inmate_covid19.jsp [https://perma.cc/8JME-RSJV] (last accessed Feb. 11, 2025) (listing "SPG" as having 0 open cases of COVID-19 as of Jan. 21, 2025). Further, the records indicate that Defendant has not tested positive for COVID-19, which supports the fact that he faces a low risk of exposure. (Doc. 70, p. 24). The Court is sympathetic to Defendant's medical concerns, but, in the Court's view, Defendant is currently held at BOP in a manner that is safe and protects his health from COVID-19.

### B. Section 3553(a) Factors

Even assuming Defendant was able to demonstrate an extraordinary and compelling reason for compassionate release, the Court does not believe Defendant is a suitable candidate under the § 3553(a) considerations.

Defendant was convicted of conspiracy to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking offense. Although Defendant's criminal history is minor, the instant offense involved 182.2 grams of actual methamphetamine, which is a significant quantity. Defendant traveled to Tulsa, Oklahoma—more than once—to acquire meth for distribution and was in simultaneous possession of drugs and a firearm. The nature and circumstances of the offenses are a dangerous combination that poses significant safety concerns for the community.

Defendant had a total offense level of 29, and the guideline range in this case recommended imprisonment for a term of 87 to 108 months on Count One and 60 months on Count Five. At sentencing, the Court considered Defendant's criminal history, his drug addiction, the fact that he did not use nor brandish the firearm, his early admissions, his strong work history, and his familial support system. The Court varied substantially downward to 43 months imprisonment on Count One. The Court ran that sentence

consecutively with 60 months of imprisonment on Count Five for a total punishment of 103 months. In light of Defendant's past conduct, character, family ties, and criminal history, the Court imposed a just sentence that provided Defendant with effective correctional treatment.

The amount of time Defendant has served to date is insufficient to reflect the seriousness of his conviction, promote respect for the law, and afford adequate deterrence to those who would seek to engage in similar criminal activities. Additionally, the Court's interest in avoiding unwarranted sentencing disparities among similarly situated defendants weighs against a sentence reduction.

For these reasons, the Court finds that Section 3553(a) factors do not justify compassionate release.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant James Blair's Motion for Compassionate Release (Doc. 70) is **DENIED**.

**IT IS SO ORDERED** on this ___13th___ day of February 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE